Joseph Henry MARTIN, Appellant,

v.

STATE of Alaska, Appellee.

No. 4749.

Supreme Court of Alaska.

Feb. 27, 1981.

---

8. The abuse of discretion standard was established in the early case of *Ahlstrom v. Cum-*  *mings,* 388 P.2d 261 (Alaska 1964).

**1226**

Sue Ellen Tatter, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Barry J. Stern, Asst. Atty. Gen., Daniel W. Hickey, Chief Pros., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

In *State v. Sundberg*, 611 P.2d 44, 50–53 (Alaska 1980), we held that the use of excessive force in effectuating an arrest did not require suppression of evidence thus obtained. The same issue is presented in the case at bar.

In the early morning hours of September 2, 1977, Joseph Henry Martin was observed by members of the Anchorage Police Department as he attempted to flee the scene of a burglary. Martin, after repeated warnings to stop, was shot by Officer William Pollard. His wounds were not fatal and Martin was arrested for the crime of burglary not in a dwelling, a violation of former AS 11.20.100.

After being formally charged, Martin moved to suppress all evidence obtained as a result of his apprehension and arrest, including physical evidence found at the scene and his identification as the perpetrator of the charged offense. His motion was denied by the superior court, and Martin entered a plea of *nolo contendere*. As authorized by our opinion in *Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974), Martin's plea was conditioned upon his right to appeal the court's ruling on his motion to suppress. *See also Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978) (issue reserved for appeal must be dispositive of the entire case).

■ As we did in *Sundberg*, we assume, *arguendo*, that Officer Pollard used excessive force in effectuating Martin's arrest.[1] The question, then, is whether our decision in that case controls the result in the case at bar. We hold that it does.[2]

---

1. The superior court in this case, contrary to the trial court's ruling in *Sundberg*, found that the amount of force used to arrest Martin was authorized by AS 12.25.080 and constitutionally permissible. It is not necessary, however, for us to decide these issues. *See Sundberg v. State*, 611 P.2d 44, 49–50 (Alaska 1980).

2. One issue that was not discussed in *Sundberg* was whether former Criminal Rule 26(g) required suppression of the evidence in that case. That issue is raised by Martin in the case at bar.

  Former Rule 26(g) provided: "Evidence illegally obtained shall not be used for any purpose including the impeachment of a witness." (See similar provision in current Evidence Rule 412.) Martin contends that the evidence against him was "illegally obtained" and, therefore, inadmissible under the rule. We disagree.

  There is no dispute that Pollard had probable cause to arrest Martin. Apart from the assumed fact that he used excessive force in effectuating that arrest, the arrest was lawful in the sense that it was justified. Thus the evidence obtained as a result of the arrest was not the product of illegality. Also, as was the case in *Sundberg*, Officer Pollard "was proceeding in accordance with existing departmental directives, and the degree of force permissible under the necessary and proper phraseology of AS 12.25.080 had not been previously construed by this court." 611 P.2d at 52 (footnote omitted). Under these circumstances, we

█ In *Sundberg*, we refused to apply an exclusionary rule, even though the evidence sought to be suppressed was obtained by the use of excessive force in arresting the accused. Our reasoning is adequately set forth in our earlier opinion and need not be repeated here.[3]

AFFIRMED.

DIMOND, Senior Justice, dissents.

DIMOND, Senior Justice, dissenting.

I believe that evidence obtained incident to an arrest brought about by excessive force should be suppressed under the exclusionary rule. The exclusionary rule serves two important and distinct purposes. First, it deters the unlawful conduct of law enforcement officials by eliminating the prosecutorial benefits of such conduct. Second, it preserves the integrity of the judicial system by ensuring that courts are not a party to the unlawful conduct.

The use of excessive force to effectuate an arrest is already deterred to some extent by the criminal sanctions, police disciplinary proceedings, civil rights actions and common law tort actions that can be brought against the offending law enforcement official. I would therefore agree with this court's conclusion in *State v. Sundberg*, 611 P.2d 44, 52 (Alaska 1980), that applying the exclusionary rule would achieve only a marginal additional deterrent effect.

However, even if the exclusionary rule need not be invoked for the purpose of deterrence, I believe the rule must be invoked to preserve judicial integrity. As Justice Connor noted in *State v. Sears*, 553

P.2d 907, 917 (Alaska 1976) (dissenting opinion), "Historically the exclusionary rule did not arise merely from the need to deter official misconduct. Rather it was designed to keep intact certain values basic to our constitutional system of government."

Justice Connor further stated in his dissenting opinion:

Unless the exclusionary rule is applied against all forms of official lawlessness we engage in governmental hypocrisy of the most serious kind. . . .

Unless some meaningful consequence follows from the violation of constitutional rights, those rights become merely a form of words without substantive content. To the extent that we condone official lawlessness we become parties to the subversion of constitutional rights, and we fail to support and defend the constitution, which we are sworn to do.

553 P.2d at 918 (footnote omitted).

I agree with those courts which have held that using excessive force to effectuate an arrest violates the arrested person's constitutional rights to due process of law and to be secure against unreasonable seizures. *E. g., Campbell v. Buckles*, 448 F.Supp. 288, 290 (E.D.Tenn.1977); *Washington Mobilization Committee v. Cullinane*, 400 F.Supp. 186, 213 (D.D.C.1975). This position is supported by various commentators as well. *E. g.*, 2 W. LaFave, Search & Seizure § 5.1(d) at 239–40 (1978); Note, *The Unconstitutional Use of Deadly Force by the Police*, 55 Chi.-Kent L.Rev. 539 (1979). *See* Note, *Substantive Due Process and the Use of Deadly Force Against the Fleeing Felon*, 7 Capital U.L.Rev. 497 (1978); Comment,

hold that the evidence was not "illegally obtained" for purposes of applying the exclusionary rule contained in former Criminal Rule 26(g).

**3.** In *Sundberg* we did warn:

[W]e think it appropriate to caution that our holding is not immutable. In the event a history of excessive force arrests is shown, demonstrating that existing deterrents are illusory, we will not hesitate to reexamine the question of whether an exclusionary deterrent should be fashioned in the situation where evidence is obtained as a result of an

arrest which is effectuated by excessive force.

611 P.2d at 52 (footnote omitted). We repeat that warning here. The record fails to persuade us, however, that our holding in *Sundberg* requires modification. The superior court's ruling in the case at bar was announced on February 13, 1979, well over a year before *Sundberg* was decided by this court. Despite the able argument of Martin's attorneys to the contrary, we see no real evidence of a subsequent "history of excessive force arrests . . . demonstrating that existing deterrents are illusory."

*Constitutional Law—Deadly Force to Arrest Nonviolent Fleeing Felons*, 42 Mo.L. Rev. 452 (1977).

It is not necessary to "assume," as does the majority opinion, that excessive force was used when Martin was arrested. The parties are not in dispute as to any of the material facts surrounding Martin's arrest. Four police officers arrived at an auto and truck parts store in Anchorage in response to a dispatch concerning a possible burglary in progress. This occurred at nighttime, but there was sufficient artificial light in the area for the officers and Martin to see each other. The store was surrounded by a six-foot-high chain link fence, topped with stands of barbed wire. Martin was inside this enclosed area, while the officers took positions around the fence outside of the area. Martin started running within the enclosed area, attempting to escape, when officers yelled at him to stop. At one point, Martin began climbing the fence, but halted when ordered to do so. Martin then started running again, and one of the officers again ordered him to stop. When Martin did not, the officer shot him. The officers then had to jump over the fence in order to get to Martin.

Under AS 12.25.070, police may not "subject a person arrested to greater restraint than is necessary and proper for his arrest and detention." Similarly, AS 12.25.080 authorizes the use of "all the necessary and proper means to effect the arrest" of one who flees after notice of a police officer's intention to make the arrest. In *State v. Sundberg*, 611 P.2d 44, 49 (Alaska 1980), this court held that this "necessary and proper" phraseology should be construed consistently with the present AS 11.81.370, which took effect on January 1, 1980. Thus, under *Sundberg*, a police officer in making an arrest or terminating an escape may

    (a) . . . use deadly force only when and to the extent he reasonably believes the use of deadly force is necessary to make the arrest or terminate the escape . . . from custody of a person he reasonably believes

    (1) has committed or attempted to commit a felony which involved the use of force against a person;

    (2) has escaped or is attempting to escape from custody while in possession of a firearm on or about his person; or

    (3) may otherwise endanger life or inflict serious physical injury unless arrested without delay.

AS 11.81.370.

I agree with the *Sundberg* court that these are appropriate criteria for determining when the use of deadly force to arrest is permissible. These criteria were not satisfied in this case. First, the record on appeal reveals no basis for a reasonable belief by the officer who shot Martin that Martin had committed or attempted to commit a felony involving the use of force against a person. Second, there is no evidence that the officer reasonably believed Martin was in possession of a firearm. Finally, there is no evidence in the record to justify a reasonable belief by the officer that Martin might otherwise endanger life or inflict serious injury unless arrested without delay. Thus, none of the three tests was met. The use of deadly force to arrest Martin was therefore unlawful and, as I indicated above, unconstitutional.

I believe that the only way in which the judicial system can avoid seeming to condone the unlawful conduct of the officer who shot Martin, and the resulting violation of Martin's constitutional rights, is to apply the exclusionary rule to suppress the evidence obtained incident to his arrest.