No. 47,971

STATE OF KANSAS, *Appellant*, v. MICHAEL DANKO and TERRY PARKS, *Appellees.*

(548 P. 2d 819)

Opinion filed April 10, 1976.

*Salvatore A. Scimeca, Jr.,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellant.

*Richard A. Pinaire,* Deputy Public Defender, of Junction City, argued the cause and was on the brief for Michael Danko, appellee.

*Charles A. Chartier,* of Junction City, argued the cause and was on the brief for Terry Parks, appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by the state, pursuant to K. S. A. 22-3603, from an order of the trial court sustaining motions of defendants to suppress evidence filed under K. S. A. 22-3216.

The question presented is whether relevant evidence recovered by a search and seizure, allegedly in violation of the Posse Comitatus Act (18 U. S. C. § 1385), is to be suppressed. The question is one of first impression in this jurisdiction.

On December 28, 1974, Officer John Hill, of the Junction City Police Department, was on patrol with Reserve Officer Clavin and Military Police Sergeant Danny Bevel, of the 977 Military Police Company from Fort Riley. Fort Riley is adjacent to Junction City and Sergeant Bevel accompanied Officer Hill under an arrangement between military authorities and Junction City police officials described as "joint patrol."

At approximately 10:45 p. m. Hill received, by radio, a report of an armed robbery at Devane's Liquor Store. The report included a description of the "get away" vehicle which was described as a

1966 or 1967 Chevrolet station wagon, green in color, with Geary County license plates and with the right taillight blacked out. Hill observed a vehicle with the right taillight out and otherwise generally answering the description. He pursued and stopped the vehicle in a nearby parking lot. Hill testified that after stopping the vehicle he asked the driver, who was later identified as defendant Terry Parks, if his vehicle could be checked. Parks replied in the affirmative. He proceeded to check the driver's seat and front area of the vehicle and asked Sergeant Bevel to search the passenger side. In the course of his search Bevel recovered a pistol under the passenger seat. At this point, Hill explained to Parks that his vehicle was stopped because it fit the description of a vehicle reported as participating in the liquor store armed robbery. Bevel showed the pistol to Hill whereupon Hill asked the passenger, later identified as defendant Michael Danko, if the pistol belonged to him. Danko replied in the affirmative. Hill testified he then advised Danko of his rights under *Miranda* (*Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974). At this point in time, James Soper, the victim of the robbery, arrived at the scene and was asked by Hill if he could identify the pistol as the one used in the robbery. Mr. Soper identified the pistol and also pointed to Danko as the person who robbed him. Parks and Danko were arrested by Hill for armed robbery.

In the course of the subsequent proceedings, defendants filed motions to suppress any and all evidence, whether tangible or intangible, obtained as a result of the search which was alleged to be unlawful, illegal and unreasonable and conducted in violation of 18 U. S. C. § 1385, commonly known as the Posse Comitatus Act.

A hearing was had on defendants' motions at the conclusion of which the trial court ruled as follows:

"The Court has carefully considered the evidence presented and the briefs submitted by the Public Defender and the State's Attorney regarding violation of 18 U. S. C. 1385.

"It appears to the Court and the Court finds that M. P. Sergeant Danny L. Bevins [Bevel], while in full uniform and on official military duty, did, under the direction or request of Officer John Hill of the Junction City Police Department, assist in the search of one Chevrolet station wagon occupied by the defendants.

"The Court further finds that such conduct was in direct violation of the above cited Code section and that this Court will not serve as an accomplice in the willful transgression of the laws of the United States.

"The Court further finds that all evidence, whether tangible or intangible, obtained as a result of the illegal participation of the United States military

personnel in the arrest, search, and seizure or interrogation of the defendants herein and the same is hereby suppressed."

Thereafter this appeal was perfected by the state.

On appeal the state maintains that the conduct of Hill and Bevel did not constitute a violation of the Posse Comitatus Act (18 U. S. C. § 1385), and that the trial court erred in excluding the evidence in question.

The Posse Comitatus Act reads as follows:

"Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both."

It appears the trial court relied solely upon violation of the Posse Comitatus Act in sustaining the motions to suppress.

The state says that the trial court apparently applied the "fruit of the poisonous tree" doctrine expressed in *Wong Sung v. United States*, 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, and that in effect its ruling was that the search and seizure of Danko's pistol provided the initial "taint," and accordingly all evidence recovered after that "taint" was excluded. The net effect of the trial court's ruling was to exclude the robbery weapon, a subsequent identification by the victim, marked money from the liquor store, and clothing taken from defendants after their arrest.

In support of its contention that violation of the Act was not established, the state cites cases from Oklahoma and Texas which appear to be the only state jurisdictions having reported decisions dealing with the question of admissibility of evidence in a posse comitatus situation. *Lee v. State*, (Okl. Cr. App.) 513 P. 2d 125, cert. den. 415 U. S. 932, 39 L. Ed. 2d 490, 94 S. Ct. 1445; *Hildebrandt v. State*, (Okl. Cr. App.) 507 P. 2d 1323; and *Hubert v. State*, (Okl. Cr. App.) 504 P. 2d 1245, all involved activities of Agents of the Criminal Investigation Division of the Fort Sill Military Reservation in conjunction with local civilian police. In each instance the Oklahoma Court of Criminal Appeals rejected defendants' efforts to exclude evidence generally on the ground that the military agents involved assumed no greater authority than that of a private citizen and, thus, the Act was not violated. In *Burns v. State*, (Tex. Cr. App.) 473 S. W. 2d 19, the Texas Court of Criminal Appeals rejected defendant's claim on the grounds that the activity of the Criminal Investigation Division of Fort Hood did not constitute a posse comitatus used "to execute the laws" under the interpretation given

by the court to the phrase as it appears in the Act. We have concluded, however, that the state's contention there was no violation of the Act in the instant case cannot be maintained.

We have been furnished the transcript of the testimony adduced at the hearing to suppress. The transcript fails to reveal any evidence indicating that either Officer Hill or Sergeant Bevel intentionally or wilfully violated the Act. Sergeant Bevel testified that he had never been instructed concerning the Posse Comitatus Act and that his only instructions were to follow the instructions of the patrol officer. There is no showing in Hill's testimony that he had ever heard of the Posse Comitatus Act. It is also to be noted that neither Hill nor Bevel has been charged with violation of the Act. Nevertheless, in our consideration of the state's appeal, we shall treat the conduct of Hill and Bevel as constituting a technical violation of the Act although neither has been charged nor convicted. This does not, however, dispose of the question presented on appeal. We cannot agree with defendants that a technical violation of the Act under the circumstances shown to exist warrants the suppression of the evidence seized and the identification of defendant Danko and the station wagon by store owner Soper.

We have examined the legislative history and purposes of the Posse Comitatus Act set out in the several cases that have come to our attention. Also, we have been informed by the exhaustive analysis of the Act and enforcement thereof by military authorities in a commentary by Major H. W. C. Furman entitled "Restrictions Upon Use Of The Army Imposed By The Posse Comitatus Act," appearing in Vols. 5-8 (No. 7) (1959-1960), Military Law Review, commencing at page 85. Major Furman traces the political and legislative history of the Act from its enactment in 1879 to its present appearance in 18 U. S. C. § 1385. He notes that although the Act has been with us for over eighty years there is a paucity of judicial decisions concerning it. Among his conclusions Major Furman states:

". . . From a strictly legal viewpoint, it is the author's conclusion that the statute is limited to deliberate use of armed force for the primary purpose of executing civilian laws more effectively than possible through civilian law enforcement channels, and that those situations where an act performed primarily for the purpose of insuring the accomplishment of the mission of the armed forces incidentally enhances the enforcement of civilian law do not violate the statute." (p. 128.)

We glean from Major Furman's work and authorities cited therein that the general overall purpose of the Act was to prevent an irre-

sponsible commander from misusing his soldiers and also to prevent similar abuses by civilian authorities. See, also, Vol. 8 (1939-1940), The University of Kansas City Law Review, "The Constitutionality Of The Posse Comitatus Act," by Walter E. Lorence, p. 164. Although not dealing with the question presented here, the scope and purposes of the Act are examined in the recent cases of *United States v. Red Feather*, 392 F. Supp. 916 (1975) and *United States v. Jaramillo*, (8th Cir. 1975), 510 F. 2d 808, both of which stemmed from the occupation of the village of Wounded Knee by members of the American Indian Movement. We find no suggestions in any of the authorities examined that the Act was intended to afford further protection to rights of individual citizens against unlawful search under the Fourth Amendment to the Constitution of the United States.

Prior to the decision in *Mapp v. Ohio*, 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A. L. R. 2d 933, reh. den. 368 U. S. 871, 7 L. Ed. 2d 72, 82 S. Ct. 23, this state, as well as many other jurisdictions, had followed the so-called non-exclusionary rule. The opposing federal exclusionary rule, fashioned under the Fourth Amendment, was declared in *Mapp* to be enforceable against the states through the due process clause of the Fourteenth Amendment. Kansas was obligated to embark upon a new course. We recognized the import of *Mapp* in *State v. Wood*, 190 Kan. 778, 378 P. 2d 536 (1963), and declared, that with respect to protection of citizens from unreasonable searches, the command of the Fourth Amendment in the Federal Constitution to federal officers is identical to the command of Section 15 of the Bill of Rights of the Kansas Constitution to law enforcement officers in Kansas. We stated that the reasonableness of a search should be determined in terms of probable cause which was said to exist if the facts and circumstances known to the officer warranted a prudent man in believing that the offense under investigation had been committed by the subject in question. In the many search and seizure cases coming before us since our decision in *Wood*, we have repeatedly said that only unreasonable searches are constitutionally prohibited. We have also consistently applied the "prudent man" test in determining the reasonableness of the search in question. In 1970 K. S. A. 22-3216 was enacted. It prescribed an orderly procedure for the determination of the admissibility of challenged evidence and put upon the state the burden of proving that a challenged search and seizure was lawful, but it worked no change in the "prudent man" test of

reasonableness rule laid down in *Wood* and subsequent cases. According to the advisory committee comment the statute was intended to provide the machinery for enforcing the constitutional protection against illegal searches and seizures in accordance with the *Mapp* decision.

In the instant case it appears the trial court rested its decision to suppress solely upon a technical violation of the Posse Comitatus Act deeming it unnecessary to determine the otherwise reasonableness of the search.

Pursuant to the provisions of K. S. A. 22-3216, when a defendant challenges the admissibility of evidence on the basis it was obtained by an unlawful search and seizure, the state has the burden of proving that the search and seizure was lawful. Laying aside the Posse Comitatus Act violation, we believe the evidence entirely sufficient to sustain the state's burden in establishing the reasonableness of the search. Officer Hill received the police dispatch within a few minutes after the liquor store robbery. He was informed that the "get away" vehicle was a station wagon with burned out right taillight and a Geary County license plate. Although some discrepancy in the color of the vehicle was indicated, we believe the facts clearly established probable cause under the "prudent man" test and, thus, the following search was reasonable and the evidentiary fruits thereof admissible unless fatally tainted because of a violation of the Act.

The ultimate question then becomes whether this court should extend the exclusionary rule to encompass a search made in connection with an incidental, technical violation of the Posse Comitatus Act.

We are cited no cases, and our research has revealed none in which a federal court or the highest court of any state, has applied the remedy of exclusion because of a Posse Comitatus Act violation. As observed by Major Furman, there is a paucity of cases dealing with any aspect of the Act even though it has been on the books for almost one hundred years. *United States v. Walden,* (4th Cir. 1974) 490 F. 2d 372, cert. den. 416 U. S. 983, 40 L. Ed. 2d 760, 94 S. Ct. 2385, reh. den. 417 U. S. 977, 41 L. Ed. 2d 1148, 94 S. Ct. 3187, is one of the few reported cases dealing directly with the exclusion of evidence in a posse commitatus situation and we find the rationale therein persuasive. *Walden* was a prosecution for violation of the Federal Firearms Act prohibiting sales to minors and nonresidents. (18 U. S. C. § 921, *et seq.*) The bulk of the

government's evidence was the product of an undercover investigation carried out in large part by several United States Marines at the request of a Special Investigator of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department. The civilian defendants sought, by pretrial motion and at trial, to exclude the testimonal evidence produced by the Marines' investigation on the ground that the investigation violated the Posse Comitatus Act and various other military regulations prohibiting use of the armed services to enforce civilian laws. The court noted that, although the Posse Comitatus Act was expressly applicable to the Army, it was regarded as a statement of federal policy and closely followed by the Department of the Navy in regulations pertaining to the Navy and Marine Corps. The court reasoned that the Navy regulation in question should be given the same legal effect as the Posse Comitatus Act. The court noted that the policy that military involvement in civilian law enforcement should be carefully restricted has deep roots in American history and that the policy is viable in present day governmental affairs. In this regard the court quoted at length from the opinion of Chief Justice Burger, writing for the court, in the recent case of *Laird v. Tatum*, 408 U. S. 1, 33 L. Ed. 2d 154, 92 S. Ct. 2318.

The *Walden* court concluded there was a violation of the Navy regulation in question, but declined to impose the extraordinary remedy of an exclusionary rule. The court warned, however, that,

". . . Should there be evidence of widespread or repeated violations in any future case, or ineffectiveness of enforcement by the military, we will consider ourselves free to consider whether adoption of an exclusionary rule is required as a future deterrent." (p. 377.)

In arriving at its conclusion the *Walden* court reasoned as follows:

"But, putting aside the question of the effectiveness of an exclusionary rule as a deterrent to violations of the Fourth Amendment, we do not find present in this case at this time the same considerations which required an exclusionary rule in the Fourth Amendment cases or in other instances where an exclusionary rule has been fashioned and applied. First, the proscription in the Instruction against the use of Marines in ordinary civilian criminal law enforcement was until today far less clear and far less widely known than the prohibition of the Fourth Amendment against unreasonable searches or the rules of court requiring an accused to be produced before a magistrate within a designated period after apprehension. *See* McNabb v. United States, 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943); Mallory v. United States, 354 U. S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957). Secondly, the Instruction expresses a policy that is for the benefit of the people as a whole, but not one that may fairly be characterized as expressly designed to protect the personal rights of defendants.

*Cf.* United States v. Heffner, supra. Thirdly, the facts that the Instruction provides no mechanism for its own enforcement—and especially no criminal sanction for its violation—and that its legal effect was far from obvious, means that admission of the evidence of guilt does not require the court to condone 'dirty business.' *See* McNabb v. United States, supra, 318 U. S. at 345-346, 63 S. Ct. 608; Eleuteri v. Richman, 26 N. J. 506, 512, 141 A. 2d 46, 49 (1958) (Weintraub, C. J.); People v. Cahan, 44 Cal. 2d 434, 445-456, 282 P. 2d 905 (1955) (Traynor, J.).

"More important than any of the foregoing is the fact that this case is the first instance to our knowledge in which military personnel have been used as the principal investigators of civilian crimes in violation of the Instruction. We are not aware from the reported decisions of other courts that there has been any other violation, let alone widespread or repeated violations." (pp. 376, 377.)

We find the rationale of the *Walden* court persuasive and particularly germane to conditions prevailing in our state. Since the inception of statehood, we have had large contingents of armed forces stationed at various forts and bases throughout Kansas. This is the first case to come before this court and to our knowledge the first to appear in any court of this state involving a violation of the Posse Comitatus Act. Certainly, the proscription of the Act was far less clear and far less widely known in this state than the constitutional prohibition against unreasonable searches. In the case at bar, the search could just as easily have been performed by Reserve Police Officer Clavin, who was present, or by any of the other officers who arrived within a few minutes. Obviously, if Sergeant Bevel had not made the search, it would have been made by the police officers either at the time or within a few minutes. Under such circumstances, we do not believe the admission of the evidence in question requires the court to condone "dirty business." Sergeant Bevel did not make an arrest or assert any military authority over either defendant. There is no evidence that he did anything that a private citizen, in the vicinity, would not have been required to do at the request of Officer Hill under the provisions of K. S. A. 22-2407. While it must be conceded the conduct of Officer Hill and Sergeant Bevel was intentional, rather than accidental or unintentional; nevertheless, we believe the total circumstances surrounding the search should be considered as a balancing factor in determining whether the drastic sanction of exclusion must be applied. We do not find present in the instant case the same considerations which required an exclusionary rule in Fourth Amendment cases.

We agree with the view of the *Walden* court that the Act ex-

presses a policy that is for the benefit of the people as a whole, rather than a policy which could be characterized as designed to protect the personal rights of individual citizens as declared in the Fourth Amendment. The absence of cases involving a posse comitatus situation, such as at bar, considered in the light of the long-time presence of military establishments in this state, leads us to the position adopted by the *Walden* court that application of the extraordinary remedy of exclusion is unnecessary as an added deterrent to the serious criminal sanctions provided in the Act. Moreover, we are informed that since the trial court's decision in this case, new military orders have been issued specifically instructing military personnel assigned to off-installation military enforcement concerning the limitations imposed on the military by the Posse Comitatus Act.

For the reasons stated the judgment of the trial court is reversed and the cause is remanded for further proceedings.