**Ralph Alan HARKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5232.**

Supreme Court of Alaska.

May 6, 1983.

Mary E. Greene, and James W. McGowan, Public Defenders, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

James P. Doogan, Asst. Dist. Atty., Harry Davis, Dist. Atty., Fairbanks, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Ralph Harker was convicted of armed robbery under former AS 11.15.240 and AS 11.15.295 and sentenced to ten years in prison, with six years suspended. Harker's conviction and sentence were upheld by the court of appeals in *Harker v. State*, 637 P.2d 716 (Alaska App.1981). We granted Harker's petition for hearing to review one aspect of that decision: the holding that Alaska's exclusionary rule, Evidence Rule 412, applies only to constitutional violations and thus not to violations of the Posse Comitatus Act (the "Act").[1] We conclude that Rule 412 does apply to non-constitutional violations under certain circumstances, but hold that there was no violation of the Act in this case; therefore, we affirm the conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 1979, a small convenience store in Fairbanks was robbed. The Fairbanks City Police Department broadcast a description of two suspects and their vehicle over police radio. Rodney Forbes, a soldier who was off duty, heard the broadcast on a police scanner he kept in his home. A few minutes later, while driving to a store, he saw a vehicle on the Ft. Wainwright Army Base that met the broadcasted description. He flagged down a nearby military police car driven by M.P. Smith and pointed out the suspect vehicle to him. Smith stopped the vehicle, searched the driver and the passenger, appellant Harker, and searched and seized evidence from the vehicle. The Fairbanks City Police were notified, and the suspects and evidence were turned over to them. At the time of his arrest, Harker was a soldier in the United States Army, stationed at Ft. Wainwright.

After prosecution of Harker for armed robbery was commenced, Harker filed motions to dismiss the case and to suppress the seized evidence. Following an omnibus and evidentiary hearing, the superior court denied the motions. Harker pleaded no contest to the charge of armed robbery, conditioned on the preservation of dispositive appellate issues in accordance with *Cooksey v. State*, 524 P.2d 1251, 1256 (Alaska 1974). *See Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978).

Harker appealed to the court of appeals, contending that the involvement of the military police in his arrest and in the search and seizure of evidence from the vehicle violated the Posse Comitatus Act. He argued that evidence taken as a result of the alleged violation should have been suppressed. The court of appeals did not decide whether there was an actual violation of the Act in this case, holding that even if

---

1. The Posse Comitatus Act, 18 U.S.C. § 1385 (1959) provides:

    Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both. The historical context of the Act was fully discussed in *Jackson v. State*, 572 P.2d 87, 89–91 (Alaska 1977) (Act not applicable to Coast Guard).

there were a violation, an exclusionary remedy should not be applied. This holding was based on two grounds: (1) that the usual considerations for applying the exclusionary rule in fourth amendment cases are not present in Posse Comitatus Act cases, and (2) that Alaska Evidence Rule 412 does not mandate a different result. 637 P.2d at 718–20.

## II. APPLICABILITY OF RULE 412 TO NON-CONSTITUTIONAL VIOLATIONS

The first issue to be decided is whether the exclusionary remedy, set forth in Alaska Evidence Rule 412, applies to the violation of statutory, as well as constitutional, rights. Rule 412 provides in relevant part: "Evidence illegally obtained shall not be used over proper objection by the defendant in a criminal prosecution for any purpose except [for certain purposes in perjury prosecutions]." Harker contends that Rule 412 should be interpreted literally, extending to all evidence "illegally obtained" regardless of the basis for that illegality. The court of appeals rejected this interpretation and held that Rule 412 applies only to evidence obtained in violation of a defendant's constitutional rights. 637 P.2d at 720. We disagree.

The exclusionary remedy stated in Rule 412 is distinct from the exclusionary rule required by *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). In that case, the United States Supreme Court "in effect declared that the exclusionary rule, which it previously regarded as a rule of evidence, now operates as a constitutional mandate upon the state courts." *Ellison v. State,* 383 P.2d 716, 718 (Alaska 1963) (footnote omitted). The exclusionary remedy provided by Evidence Rule 412, on the other hand, operates as a state rule of evidence. Although Alaska's evidentiary rule cannot provide less protection than that afforded by the federal constitution, it can provide greater protection.

The primary rationale [2] behind the federal exclusionary rule is to deter police from using unconstitutional methods of law enforcement. *Mapp v. Ohio,* 367 U.S. at 656, 81 S.Ct. at 1691, 6 L.Ed.2d at 1090. Deterrence is also one of the purposes behind Rule 412 and its predecessor, Criminal Rule 26(g).[3] The policy underlying Rule 26(g) was discussed in *State v. Sears,* 553 P.2d 907 (Alaska 1976). In that case, we quoted from the committee notes of the Criminal Rules Revision Commission, which addressed the standing problem discussed in *Dimmick v. State,* 473 P.2d 616 (Alaska 1970): " 'The majority adopt the reasoning of Justice Connor in *Dimmick v. State,* [473 P.2d at 625,] that it is important that the government obey the law as well as enforce it and by excluding otherwise probative evidence official misconduct is deterred.' " 553 P.2d at 911.

The Commentary to Evidence Rule 412 also discusses the deterrence rationale: "Although illegally obtained evidence may be highly probative, this rule recognizes that such evidence must generally be excluded in order to breathe life into constitutional guarantees and to remove incentives for governmental intrusion into protected areas." Alaska R.Evid. Commentary at 103. It is clear that the phrase "to breathe life into constitutional guarantees" can only apply to violations of constitutional rights. The second phrase, "to remove incentives for governmental intrusion into protected areas," is not so limited. Rather, this phrase can apply to governmental intrusion into areas protected by statutes as well as by the state or federal constitution. There-

---

2. The other rationale is to preserve the integrity of the judicial system. The United States Supreme Court tends to focus exclusively on the deterrence rationale. *See, e.g., United States v. Calandra,* 414 U.S. 338, 350–52, 94 S.Ct. 613, 621–22, 38 L.Ed.2d 561, 573 (1974). We have limited the judicial integrity rationale to cases of gross police misconduct. *Elson v.*

*State,* 659 P.2d 1195, 1205, (Alaska 1983); *State v. Sears,* 553 P.2d 907, 914 (Alaska 1976).

3. Alaska R.Crim.P. 26(g) stated: "Evidence illegally obtained shall not be used for any purpose including the impeachment of any witness." Rule 26(g) was repealed by Supreme Court Order on August 1, 1979, the day the Alaska Rules of Evidence went into effect.

fore, Rule 412 is not necessarily limited to violations of constitutional rights. Accordingly, we reverse the court of appeals' holding on this issue.

We do not, however, hold that Rule 412 automatically applies to violations of all statutes, including the Posse Comitatus Act. In delimiting the scope of Rule 412 in earlier decisions, we have balanced the purpose behind excluding illegally obtained evidence with the interest in admitting reliable evidence in those proceedings. *E.g., Elson v. State,* 659 P.2d 1195, at 1202, (Alaska 1983) (applicability of exclusionary rule in sentencing proceedings); *State v. Sundberg,* 611 P.2d 44, 52 (Alaska 1980) (applicability of exclusionary rule to violations of statute prohibiting excessive force); *State v. Sears,* 553 P.2d at 912 (applicability of Rule 26(g) in probation revocation proceedings). *See also Martin v. State,* 623 P.2d 1225, 1226–27 nn. 2 & 3 (Alaska 1981) (evidence obtained in violation of statute prohibiting excessive force not illegally obtained under Rule 26(g)).

In the present case, it is not necessary for us to determine whether the deterrent effect of excluding evidence obtained as a result of a violation of the Posse Comitatus Act is outweighed by the interest in admitting such evidence at trial because we conclude, as set forth below, that the conduct of the military police in this case did not violate the Act.

### III. VIOLATION OF THE POSSE COMITATUS ACT

Harker contends that the actions of M.P. Smith in searching and seizing evidence from him and the vehicle in which he was a passenger violated the Posse Comitatus Act. The Act, 18 U.S.C. § 1385 (1959), provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

The court of appeals did not reach the issue of whether there was an actual violation of the Act. The superior court held that there was no violation because "the arrest took place on an army base, ... [and] the defendant was in the military at the time he was stopped and arrested by military authorities on a military base."

We are aware of only three cases in which a violation of the Act has been found.[4] In *Wrynn v. United States,* 200 F.Supp. 457, 463–65 (E.D.N.Y.1961), a violation was found when active duty Air Force personnel, at the request of state authorities, flew an Air Force helicopter outside of a military installation to search for an escaped civilian convict. A "technical violation" of Navy regulations, which are substantially similar to the Act, was found in *United States v. Walden,* 490 F.2d 372, 374 (4th Cir.), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974). Marine Corps personnel, acting at the specific request of federal agents, bought firearms off of the military post from civilians who were selling them in violation of federal firearms statutes. A technical violation was also found in *State v. Danko,* 219 Kan. 490, 548 P.2d 819 (Kan.1976). In that case, a military policeman and a city policeman patrolled together under an arrangement between military authorities and city police

---

4. Possible violations of the Act were found in *United States v. Jaramillo,* 380 F.Supp. 1375 (D.Neb.1974), *appeal dismissed,* 510 F.2d 808 (8th Cir.1975), and *United States v. Banks,* 383 F.Supp. 368 (D.S.D.1974), *appeal dismissed* sub nom. *United States v. Means,* 513 F.2d 1329 (8th Cir.1975). These cases were two of several cases that addressed the application of the Act to the military involvement in law enforcement activities during the 1973 Wounded Knee uprising. *See also United States v. McArthur,* 419 F.Supp. 186, 194 (D.N.D.), *aff'd* sub nom.

*United States v. Casper,* 541 F.2d 1275 (8th Cir.), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1976); *United States v. Red Feather,* 392 F.Supp. 916 (D.S.D.1975). The courts in *Jaramillo* and *Banks* believed that an army colonel, who was sent as a Department of Defense observer to the disorder, violated the Act when he proceeded to give advice to the civilian authorities. The Wounded Knee cases are factually distinguishable from the present case and provide little assistance in analyzing Harker's claim.

officials. Following an armed robbery report, the policemen stopped a car matching the description of the "get away" car. The military policeman, on request of the city patrolman, helped with the search of the car. *Id.* at 821–22.

The state contends that the determining factor in whether the Act has been violated is whether an independent military purpose justified the military involvement:

> [I]n *Wrynn* and *Walden,* . . . [there was no] valid independent military reason to search off-post for escaped civilian prisoners (*Wrynn*) or to investigate off-post violations of federal firearms laws by civilians. (*Walden*). The violation found in *Danko* . . . was caused by the M.P.'s off-post search of a civilian vehicle, an activity that *could not* legitimately further the presumably valid military interest otherwise served by his joint town patrol with uniformed local police—to report uniform violations and other misconduct in town by military personnel from the nearby army post.

Support for this analysis is found in Furman, *Restrictions Upon Use of the Army Imposed by the Posse Comitatus Act,* 7 Mil. L.Rev. 85, 128 (1960), *quoted in State v. Nelson,* 260 S.E.2d 629, 639 (N.C.1979):

> "[T]he statute is limited to deliberate use of armed force for the primary purpose of executing civilian laws more effectively than possible through civilian law enforcement channels, and . . . those situations where an act performed primarily for the purpose of insuring the accomplishment of the mission of the armed forces incidentally enhances the violation of civilian law do not violate the statute."

In the majority of cases in which no violation has been found, the independent military purpose that justified the military conduct was the prevention of illicit drug transactions involving active duty military personnel, regardless of whether such conduct took place on military installations. *See State v. Trueblood,* 265 S.E.2d 662, 664 (N.C.App.1980); *Lee v. State,* 513 P.2d 125, 126 (Okla.App.1973); *Hildebrandt v. State,* 507 P.2d 1323, 1325 (Okl.App.1973); *Hubert v. State,* 504 P.2d 1245, 1246–47 (Okl.App. 1972); and *Burns v. State,* 473 S.W.2d 19, 21 (Tex.Cr.App.1971) (army criminal investigation division agents, investigating drug sales to soldiers, arranged or participated in off-post "buys" and turned resulting evidence over to state authorities). *See also United States v. Banks,* 539 F.2d 14 (9th Cir.1976) (military agents arrested and searched civilian drug dealer on military post, turning civilian and evidence seized over to federal civilian authorities for prosecution).

*State v. Nelson,* 298 N.C. 573, 260 S.E.2d 629 (N.C.1979), involves a fact pattern similar to the present case; the crime, committed by military personnel, occurred off base, and the alleged violation of the statute occurred on base. Two soldiers raped a woman at gunpoint in front of her husband in a motel and robbed the couple of their money and jewelry. Both soldiers were arrested a week later on an unrelated charge and confined in a county jail. Pursuant to military regulations, which require an inventory of the property of a soldier who is absent from his Army unit more than twenty-four hours, military personnel made an inventory of items in the soldiers' quarters. After reading about the robbery in a newspaper a few days later, military personnel looked at the soldiers' property again and discovered that it matched the newspaper description of the stolen property. These items were subsequently turned over to civilian authorities. *Id.* at 634–35.

The court found that the inventory of the soldiers' property was for an independent military purpose and that the later examination was constitutional because the items had already been legitimately seen once. *Id.* at 639. The court held that the act of turning over to civilian authorities evidence discovered pursuant to an independent military purpose "is only a passive involvement in the enforcement of civilian law." *Id.* (citing *United States v. Red Feather,* 392 F.Supp. 916 (D.S.D.1975) (passive activities incidentally aiding civilian law enforcement not precluded by the statute)).

Applying the "independent military purpose" criterion to this case, the state contends that M.P. Smith had an independent military duty to stop the vehicle in which Harker was riding to protect persons on the base from fleeing armed felons. The state quotes from a law review article which points out that "the Code [10 U.S.C. § 814(a) (1970)] specifically provides that a commander may deliver to civil authorities a member of the armed forces accused of an offense under civil criminal law, insuring that military reservations do not become havens for those who violate criminal law." Note, *Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act,* 70 Mil.L.Rev. 83, 104 (1975). In accordance with this analysis, we conclude that M.P. Smith had an independent military duty to stop the vehicle, arrest Harker, and then turn him over to civilian police. Harker nonetheless contends, however, that the search of the vehicle violated the Act because no military purpose could be served by searching the vehicle after it was no longer in Harker's control.

This contention loses sight of the express language of the Posse Comitatus Act, which is violated when one "willfully uses" the armed forces for civilian law enforcement. In all other cases finding a violation of the Act, the military conduct was at the *request* of a civil law enforcement agency. *Wrynn,* 200 F.Supp. at 458; *Walden,* 490 F.2d at 374; *Danko,* 548 P.2d at 820. There is no indication in the record of this case that the police requested assistance from the Army. Instead, the broadcast was picked up by an off-duty soldier who was acting in his civilian capacity. Nor was the search of the car undertaken at the request of the Fairbanks City Police; it occurred before they arrived on the base. Therefore, the army was not "willfully used" for civilian law enforcement.

In view of the facts that the military has a legitimate independent interest in protecting persons on base from fleeing armed felons and that the police did not request assistance from the military, we conclude that the conduct of the military police did not violate the Posse Comitatus Act. Accordingly, the conviction of Harker is affirmed.

AFFIRMED.