MUNICIPALITY OF
ANCHORAGE, Petitioner,

v.

Russell E. KING, Respondent.

No. A–2160.

Court of Appeals of Alaska.

May 6, 1988.

---

John E. McConnaughy, III, Asst. Mun. Prosecutor, and Jerry Wertzbaugher, Mun. Prosecutor, Anchorage, for petitioner.

Frederick T. Slone, Anchorage, for respondent.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Russell E. King was charged with driving while intoxicated (DWI). Anchorage Municipal Code (AMC) § 09.28.020. The district court ordered the suppression of evidence in this case on the ground that the involvement of Elmendorf Air Force Security Officers in King's prosecution for DWI violated the Posse Comitatus Act. 18 U.S.C. § 1385. The municipality filed a petition for review. We granted review and requested additional briefing. We now reverse the district court's order to suppress.

On May 1, 1987, King approached the Boniface entrance gate to Elmendorf Air Force Base where Air Force Special Police Officer Devlin was on duty. When Devlin stopped King for a routine identification check, Devlin noticed that King exhibited symptoms of intoxication. These indications included an odor of alcohol, slow movements, and slurred speech. Devlin asked King to perform several field sobriety tests which King failed.

After the tests, King informed Devlin that he would not drive his vehicle onto the military facility if it would be a problem. King offered to leave his vehicle at the entrance, or turn around and leave the base altogether. Devlin, however, placed King

under arrest and transported him to the Anchorage Police Department.

At the police station, Anchorage Police Officer Hooks gave King an Intoximeter test which indicated .207 grams of alcohol per 210 liters of breath, equivalent to a blood alcohol level of .207. Devlin then transported King to the committing magistrate at the courthouse who charged King with DWI. The complaint was signed by Devlin and notarized by another military officer.

District Court Judge David C. Stewart issued an order suppressing all evidence obtained after King was transported to the Anchorage Police Department. According to the court:

> The independent military purpose of ensuring that drivers who are under the influence of alcohol are kept off base justifies the arrest of King, a civilian. However, the activity of the military in this case is more than just "passive involvement." ... The Air Force was "willfully used" for enforcement of civilian law.

■ Devlin's actions were thus seen to violate the Posse Comitatus Act, which provides:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

The Act was adopted in 1878 to limit the use of federal troops in preserving order and stabilizing the "Republican government of carpetbaggers and scalawags" in the southern states. *Jackson v. State*, 572 P.2d 87, 90 (Alaska 1977). There is no question, however, that the Act remains viable today. The Act appears designed to limit the direct and active use of the military by civil law enforcement authorities, and to protect civilians from the exercise of regulatory or proscriptive military authority. *Harker v. State*, 637 P.2d 716, 719 (Alaska App. 1981), *aff'd*, 663 P.2d 932

(Alaska 1983); *see also Jackson*, 572 P.2d at 89–91.

■ Passive activities of military authorities that incidentally aid civilian law enforcement, however, are not precluded by the statute:

> [T]he statute is limited to deliberate use of armed force for the primary purpose of executing civilian laws more effectively than possible through civilian law enforcement channels, and ... those situations where an act performed primarily for the purpose of insuring the accomplishment of the mission of the armed forces incidentally enhances the enforcement of civilian law do not violate the statute.

Furman, *Restrictions Upon Use of the Army Imposed by the Posse Comitatus Act*, 7 Mil.L.Rev. 85, 128 (1960), *quoted in Harker v. State*, 663 P.2d 932, 936 (Alaska 1983). *See also United States v. Red Feather*, 392 F.Supp. 916, 925 (D.S.D.1975).

The municipality contends that the trial court erred as a matter of law when it concluded that the Posse Comitatus Act applied to Devlin's actions. The municipality relies on the Alaska Supreme Court's decision in *Harker* to support its argument. We agree with the municipality that *Harker* is dispositive.

In *Harker*, a convenience store was robbed and the Fairbanks police broadcasted a description of the robbery suspects and their vehicle over the police radio. An off-duty soldier heard the broadcast. A little later, the soldier observed a vehicle matching the broadcasted description. He then flagged down Military Police Officer Smith, who stopped the suspected vehicle on the Fort Wainwright Army Base. Smith then searched the driver and passenger, and seized evidence from the vehicle. The Fairbanks police were notified, and the suspects and evidence were turned over to them. At the time of his arrest, Harker was a soldier in the United States Army stationed at Fort Wainwright. 663 P.2d at 933.

The Alaska Supreme Court concluded that the actions of Military Police Officer Smith did not violate the Act. The *Harker*

court pointed out that, in other jurisdictions, the determining factor in assessing whether the Act has been violated is whether an independent military purpose justified the military involvement. *Id.* at 936. According to the supreme court, Smith had an independent military duty to stop Harker, arrest him, and turn him over to the police in order to protect the persons on base from a fleeing armed felon. *Id.* at 937. The supreme court also justified the search of the vehicle by Smith on the ground that there was no "willful use" of the armed forces for civilian law enforcement because the civilian law authority had not made a request for assistance to the military. *Id.* at 936–37.

▉ In the case before us, Devlin had an independent military duty and purpose to protect the welfare of persons who were on base. Like Smith, who was permitted to arrest Harker and turn him over to the police to protect persons on base from fleeing felons, Devlin was entitled to arrest King and turn him over to the authorities in order to protect persons on base from drunk drivers. The actions subsequent to the arrest—the transportation to the Anchorage Police Department for administration of the breath test, the signing of the complaint, and the transportation to the magistrate—were all performed with this same independent military purpose. Moreover, there was no "willful use" of the military by civil authorities in this case because Devlin's actions, like those of Smith, were not performed at the request of the police.

▉ King's argument that Devlin's military duty and purpose could have been served by accepting King's offer not to drive onto the base is unpersuasive. The military's independent purpose to protect the welfare of persons on base includes the duty to ensure that on-base DWI offenders are prosecuted, so that future offenders will be deterred.

We are aware of only four cases in which a violation of the Posse Comitatus Act has been found. In *Wrynn v. United States,* 200 F.Supp. 457, 463–65 (E.D.N.Y.1961), a violation was found when military person-
nel, at the request of the state police, flew a helicopter off the base to assist in the search for an escaped civilian convict. In *United States v. Walden,* 490 F.2d 372, 374 (4th Cir.), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974), a violation of military regulations substantially similar to the Act was found when military personnel, acting at the specific request of federal agents, bought firearms off base from civilians who were selling them in violation of federal law.

A "technical" violation of the Act was also found in *State v. Danko,* 219 Kan. 490, 548 P.2d 819 (1976). In *Danko,* a military policeman and a city policeman patrolled together under an arrangement between the military and city police authorities. The policeman stopped a civilian robbery suspect off base and the military policeman, at the request of the civilian policeman, assisted with the search of the car. *Id.* 548 P.2d at 820–22. Finally, in *Taylor v. State,* 645 P.2d 522, 523 (Okla.Cr.App. 1982), a violation was found when a military police officer, investigating two enlisted men's participation in drug-trafficking, asked the local police for assistance when his investigation led to an off-base source. The police outfitted the military officer with a radio transmitter and provided him with money to make an undercover purchase. The police arrested the civilian defendant after he sold drugs to the military officer. The court found it particularly offensive that the military police officer pulled a gun during the arrest, and actively participated in the search of the defendant's house after the arrest.

These authorities, however, do not alter our conclusion that Devlin's actions did not violate the Posse Comitatus Act. In each case of a violation, the questioned military activity occurred either off base or in response to a request from the police. This appears to be entirely consistent with the requirement in *Harker* that the actions of the armed services must be prompted by an independent military purpose or duty.

King contends that *Harker* is inapplicable to his case because King was a civilian when Devlin arrested him. King's argu-

ment is without merit. *United States v. Banks,* 539 F.2d 14 (9th Cir.1976), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976), makes it clear that the military may take action against civilians. In *Banks,* Air Force investigators arrested Banks, a civilian, and three airmen after the investigators conducted an on-base search and discovered heroin in a barrack and in Banks' possession. On appeal, Banks argued that the military search and arrest of a civilian for a civilian offense violated the Posse Comitatus Act. The Ninth Circuit Court of Appeals rejected this argument, however, holding that the Act does not preclude the military from "acting upon on-base violations committed by civilians." *Id.* at 16; *see also United States v. Griley,* 814 F.2d 967, 976 (4th Cir.1987).

King also argues that *Harker* is distinguishable because the offense did not occur on military property. There can be no question, however, that the area surrounding the entry gate to the Elmendorf Air Force Base is the property of the Air Force. In fact, the trial court so found in its suppression order: "On May 1, 1987 Russell E. King was driving a motor vehicle on a military reservation, i.e., Elmendorf Air Force Base." This finding is not clearly erroneous.

King next claims that Devlin's actions violated the Act because Devlin did not act pursuant to military law. King offers no authority, however, to support this contention. Moreover, *Harker* makes it clear that the appropriate inquiry in determining whether the Posse Comitatus Act was violated is not whether the armed forces acted pursuant to military law, but whether a military purpose prompted the serviceman's actions. *Id.* at 936.

Finally, King relies on a line of cases which describe certain activities that are generally considered to be a violation of the Act. In *Red Feather,* the court suggested that servicemen are acting in their military rather than individual capacity, in violation of the Act, when the following activities occur:

> [A]rrest; seizure of evidence; search of a person; search of a building; investigation of crime; interviewing witnesses; pursuit of an escaped civilian prisoner; search of an area for a suspect and other like activities.

*Id.* at 925. In addition, King cites to *Bissonette v. Haig,* 776 F.2d 1384 (8th Cir.1985), *aff'd,* —— U.S. ——, 108 S.Ct. 1253, —— L.Ed.2d —— (1988). The *Bissonette* court held that the Act is violated if the military action "regulates, forbids or compels some conduct on the part of those claiming relief." *Id.* at 1390.

The cases relied upon by King are unpersuasive because each involved the use of the military by civil authorities for civilian law enforcement. *Red Feather* and *Bissonette* discuss whether specific actions taken by the military in cooperation with civil authorities in response to the Indian occupation of the nonmilitary village of Wounded Knee violated the Act. *Red Feather,* 392 F.2d at 916; *Bissonette,* 776 F.2d at 1385. Here, on the other hand, the police did not use the military in any way. Instead, Devlin acted with an independent military purpose to maintain law and order, and to protect the welfare of persons on base from drunk drivers. The authorities cited by King simply do not address this type of scenario. Accordingly, we find that the conduct of the military police did not violate the Posse Comitatus Act.

The suppression order of the district court is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.