2008-NMCA-157

203 P.3d 105

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jeremy MONDRAGON, Defendant–Appellant.**

**No. 26,346.**

Court of Appeals of New Mexico.

Oct. 27, 2008.

Hugh W. Dangler, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} The question before us is whether injuries inflicted on a fetus, which result in the death of a child born alive, support a charge for child abuse resulting in death under NMSA 1978, § 30–6–1(E) (2004) (amended 2005). Based on the language of the statute, we conclude that the trial court erred by denying Defendant's motion to dismiss the charges, and we reverse.

## I. BACKGROUND

{2} The parties stipulated to the following facts for the purposes of the motion to dismiss. At the time of the incident, Defendant and Mother lived together, and Mother was 24 weeks pregnant. On September 4, 2002, Mother called the police for assistance in order to get to the hospital. She reported that someone had entered her home on the previous evening and raped her. After sheriff's deputies arrived, Mother was transported to the hospital.

{3} At the hospital, the deputies took statements from Mother and Defendant. After questioning, Defendant admitted that he had hit Mother "on top of her head with his knuckles, on the side, leg or butt with nunchucks, and that he slapped her on the side of her face with a backhand." He further admitted to "kicking or pushing her on the side near her left hip and that she may have hit her stomach when she fell against a table." Hospital staff documented injuries to Mother's head and bruising on her left flank. The next day, Mother's water broke during a pelvic exam, and on September 10, Mother gave birth to a baby boy. He died on September 12. The Office of the Medical Examiner ruled the manner of death to be a homicide and the cause of death to be prematurity and infection due to maternal abdominal blunt trauma.

{4} The State indicted Defendant on three counts: abuse of a child resulting in death, aggravated battery with a deadly weapon of

Gary K. King, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

a household member, and aggravated assault against a household member with a deadly weapon. Defendant filed a motion to dismiss the child abuse charge, contending that the child abuse statute could not be read to punish for injury to a fetus. Defendant also filed a motion to suppress his oral statements to the deputies and argued that he was not advised of his constitutional rights and that his statements were involuntary and the result of coercion.

{5} On July 28, 2005, the trial court issued a letter decision denying Defendant's motion to dismiss. The trial court summarized the State's allegations to be that Defendant injured Mother, which resulted in the death of a child. The trial court also denied Defendant's motion to suppress his statements. Defendant pled guilty to voluntary manslaughter and reserved the right to appeal "the legal rulings in this case."

## II. DISCUSSION

{6} Defendant raises two issues on appeal. First, he argues that the trial court improperly denied his motion to dismiss the child abuse charge. Second, Defendant contends that the trial court should have suppressed his statements to the deputies at the hospital. Because we agree with Defendant that the child abuse charge should have been dismissed, we do not reach the suppression issue. The facts are undisputed, and Defendant maintains that the trial court erred as a matter of law. Accordingly, we review de novo the denial of the motion to dismiss. *State v. Shirley*, 2007–NMCA–137, ¶ 18, 142 N.M. 765, 170 P.3d 1003, *cert. denied*, 2007–NMCERT–010, 143 N.M. 73, 172 P.3d 1285.

{7} Defendant argues that the charge of child abuse resulting in death must be dismissed because it stems from injuries that Defendant allegedly inflicted on a fetus, and not on a child. This result is compelled, Defendant contends, by this Court's decision in *State v. Martinez*, 2006–NMCA–068, 139 N.M. 741, 137 P.3d 1195, which held that "the Legislature did not intend for a viable fetus to be included within the statutory definition of a child for the purposes of the child abuse statute." *Id.* ¶ 13.

{8} The State distinguishes *Martinez* and focuses instead on the fact that Defendant's actions allegedly caused the death of a child, and not a fetus, because the baby was born alive. For this reason, the State urges us to apply the common law born alive rule to the facts of this case. The born alive rule allows a homicide prosecution in the event that injuries are inflicted on a fetus, the child is born alive, and the child subsequently dies as a result of the in utero injuries. *See State v. Willis*, 98 N.M. 771, 771–72, 652 P.2d 1222, 1222–23 (Ct.App.1982). The trial court agreed with the State, explaining that "the State alleges that the injuries to [M]other caused a sequence of events that injured the child, ultimately resulting in the child's death. Because the child was born alive, [D]efendant's motion, as a matter of law, must fail." We consider the parties' arguments in turn, beginning with the language of the charging statute. *See State v. Lopez*, 2000–NMCA–001, ¶ 6, 128 N.M. 450, 993 P.2d 767 (looking first to the language of the statute).

### A. Section 30–6–1

{9} "We look first to the plain language of the statute." *State v. Bennett*, 2003–NMCA–147, ¶ 6, 134 N.M. 705, 82 P.3d 72. Child abuse is defined as "a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be ... placed in a situation that may endanger the child's life or health[.]" Section 30–6–1(D)(1). Section 30–6–1(E) explains that "[i]f the abuse results in great bodily harm or death to the child, he is guilty of a first degree felony." Based on the plain language of Section 30–6–1(D)(1), in order for a person to be charged with child abuse, *a child* must have been placed in a dangerous situation. Section 30–6–1(E) attaches heightened punishment when the abuse of a child results in the death of that child. The language of the recently amended version of the statute makes clear that the abuse of a child must result in the death of that child: "Whoever commits intentional abuse of a child less than twelve years of age that results in the death of the child is guilty of a first degree felony resulting in the death of a child." Section 30–6–1(H) (2005). Thus, from the

language of the charging statute, we conclude that in order to charge a person with child abuse resulting in death, the State must have evidence (1) that a child was abused and (2) that the child died as a result of that abuse. We now consider whether a fetus is a child for the purposes of Section 30–6–1.

## B. *Martinez*

{10} In *Martinez*, a mother gave birth to a child who showed signs of cocaine withdrawal. 2006–NMCA–068, ¶ 2, 139 N.M. 741, 137 P.3d 1195. The mother was charged with felony child abuse. *Id.* ¶ 4. This Court held that the mother's motion to dismiss the charges should have been granted. *Id.* ¶ 13. The *Martinez* Court explained that the Legislature had consistently addressed the killing of fetuses and the killing of persons separately. *Id.* ¶ 7. Further, the Court acknowledged that it could not "expand the meaning of 'human being' to include an unborn viable fetus because the power to define crimes and to establish criminal penalties is exclusively a legislative function." *Id.* ¶ 9. As we stated earlier, in *Martinez*, this Court concluded that "the Legislature did not intend for a viable fetus to be included within the statutory definition of a child for the purposes of the child abuse statute." *Id.* ¶ 13.

{11} Defendant contends that the holding in *Martinez* requires us to reverse the trial court. Based on our earlier discussion of the statutory language, we agree. Section 30–6–1(E) requires the State to establish that a child was abused and the child's death resulted from the abuse. In the present case, the State has alleged that a child's death resulted from Defendant's abuse, because the child was born alive and subsequently died. Based on the holding in *Martinez*, however, the State cannot establish that a child was abused by Defendant. At the time that Defendant's alleged acts occurred, on September 4, there was no child—because according to *Martinez*, a fetus is not a child for the purposes of the child abuse statute. Consequently, Defendant cannot be charged with child abuse resulting in death under Section 30–6–1.

{12} The State attempts to distinguish *Martinez* by providing auxiliary rationales for the holding. For example, the State suggests that the *Martinez* Court did not believe that the state had proven the elements of child endangerment in that case. In the alternative, the State argues that the crime of endangerment was complete when the mother in *Martinez* completed the act of ingesting a controlled substance, whereas in the present case, Defendant's alleged acts were not completed until the child died. The State also contends that we should evaluate the crime of child abuse resulting in death differently from the crime of child endangerment. These distinctions disregard the analysis that was actually undertaken by the *Martinez* Court: to interpret the language of the child abuse statute. *See* 2006–NMCA–068, ¶ 5, 139 N.M. 741, 137 P.3d 1195. The *Martinez* Court did not consider whether there was substantial evidence to support the charge or whether the crime was complete. The State does not explain how the Legislature could have intended the word "child" to include a fetus under Section 30–6–1(E), but not under Section 30–6–1(D)(1).

{13} Accordingly, we hold that the trial court should have granted Defendant's motion to dismiss because, although the State alleged that Defendant's actions resulted in the death of a child, the alleged injuries were inflicted on a fetus, which is not a child under Section 30–6–1.

## C. Born Alive Rule

{14} The State contends that the trial court correctly applied the common law born alive rule. According to the State, the common law is a supplement to the criminal code, the common law acknowledges that a fetus born alive is a person, and the Legislature has not indicated that it has repealed the common law rule. With this as background, the State argues that the common law rule applies "to allow criminal prosecution for conduct causing injury to a fetus that results in injury or death to the child after birth." We are not persuaded.

{15} The common law rule historically applies to allow homicide prosecutions. *See Willis*, 98 N.M. at 771, 652 P.2d at 1222

("The killing of a fetus, under the common law, was not homicide unless the fetus had been born alive; until born alive there was no human being."). Defendant was not charged with homicide, but with child abuse resulting in death under Section 30–6–1. Homicide, at its most basic, is "the killing of one human being." NMSA 1978, § 30–2–1(A) (1994); *see also* 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.1(c), at 419 (2d ed. 2003) ("It is a general requirement of the law of homicide that the victim be a living human being."). Child abuse resulting in death, however, as we have explained, requires more—that a defendant inflict abuse on a child and that the abuse cause the death of that child. Section 30–6–1. The State's application of the born alive rule to the present action would have us disregard the dual requirements of Section 30–6–1, in favor of the single requirement of a homicide prosecution. There is no dispute in the present case that Mother gave birth to a live child and that the child tragically died. We cannot ignore, however, the language of the charging statute, which requires that the initial abuse be inflicted on a child, and the construction of that statute by the *Martinez* Court, which held that a fetus is not a child for the purposes of the child abuse statute. Thus, the born alive rule—permitting homicide actions when a child dies of prenatally inflicted injuries—does not change the outcome because, in the case before us, Defendant was not charged with homicide, but under Section 36–6–1.

{16} The State, citing cases from other jurisdictions, argues that the born alive rule allows Defendant to be prosecuted for child abuse without running afoul of *Martinez*. In the cases cited by the State, the courts refused to prosecute pregnant women for prenatal ingestion of illegal drugs, as in *Martinez*, but allowed third parties to be charged with homicide where prenatal injuries resulted in the death of a live child. *See State v. Cotton*, 197 Ariz. 584, 5 P.3d 918, 922–23 (Ct.App.2000) (holding that a defendant could be charged with homicide for injuries inflicted in utero that resulted in the death of a child born alive); *Reinesto v.Super. Ct.*, 182 Ariz. 190, 894 P.2d 733, 735 (Ct.App.1995) (concluding that the plain meaning of the

child abuse statute "refers to conduct that directly endangers a child, not to activity that affects a fetus and thereby ultimately harms the resulting child"); *State v. Deborah J.Z.*, 228 Wis.2d 468, 596 N.W.2d 490, 493 (Ct.App.1999) (determining that the legislature intended to limit the definitions of "human being" in the homicide and reckless injury statutes to "one who has been born alive"); *State v. Cornelius*, 152 Wis.2d 272, 448 N.W.2d 434, 436–37 (Ct.App.1989) (holding that a defendant could be charged with homicide if the injured fetus was born alive).

{17} These cases do not advance the State's argument because Defendant was not charged with homicide, but, rather, with child abuse resulting in death. As we have explained, homicide is only concerned with the victim's status at the time of death, while child abuse resulting in death requires the victim to have a certain status both at the time of the abuse and at the time of death. The construction of the word "child" to exclude a fetus under Section 30–6–1 has no bearing on homicide charges against a person who inflicts fatal prenatal injuries on a fetus who is born alive. *See Cotton*, 5 P.3d at 923 ("Because the infant here was undeniably a 'person' at the time of her death a day after the shooting, it is irrelevant that the injuries that led to her death were inflicted while she was still in utero." (emphasis omitted)). The construction of the word "child" to exclude a fetus under Section 30–6–1 is determinative in the present case because Defendant was charged under that statute and that statute requires the victim to be a child both at the time of abuse and at the time of death. The State's reading of these cases provides a rationale for a policy differentiation between the punishment of pregnant women and the punishment of third parties. Nevertheless, the State's policy approach fails to address the requirements of our child abuse statute and the construction of that statute in *Martinez*.

{18} In addition, the cases cited by the State construe the statutes of other states, and their holdings are not based on the distinction between injuries inflicted by a third party and actions taken by a woman during pregnancy. *See Cotton*, 5 P.3d at 920

(defining the issue on appeal as "whether a newborn child who dies from injuries inflicted while the child was in utero is a 'person' within the meaning of Arizona's homicide statutes" (emphasis omitted)); *Reinesto*, 894 P.2d at 735 ("The plain language of [the statute] indicates that the legislature intended to proscribe conduct by any *person* that causes physical harm to a *child*."); *Deborah J.Z.*, 596 N.W.2d at 492 ("The question presented by this appeal-whether an unborn child is a 'human being' within the statutes for attempted first-degree homicide and first-degree reckless injury-is an issue of statutory construction."); *Cornelius*, 448 N.W.2d at 437 ("After reviewing the applicable statutes, we find that they unambiguously allow for the charges[.]"). Only *Reinesto* includes a discussion of the policy reasons behind refraining from charging pregnant women for child abuse based on actions taken during gestation. 894 P.2d at 736 ("Were we to extend the statute to prenatal conduct that affects a fetus in a manner apparent after birth—conduct that would be defined solely in terms of its impact on the victim—the boundaries of proscribed conduct would become impermissibly broad and ill-defined."). Accordingly, we consider these out of state cases to be unhelpful in construing the language of Section 30-6-1.

## III. CONCLUSION

{19} Section 30-6-1 controls this appeal, and *Martinez* construed that statute to exclude "fetus" from the definition of "child." As a result, Defendant's alleged infliction of injuries to a fetus, which resulted in the death of a child, is insufficient to support a charge of child abuse resulting in death under Section 30-6-1. Accordingly, we reverse the trial court.

{20} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.