**Certiorari Denied, December 16, 2010, No. 32,684**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2011-NMCA-007**

**Filing Date:   September 28, 2010**

**Docket No. 28,693**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**RAYMOND MIGUEL GONZALES,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

**OPINION**

**CASTILLO, Judge.**

**{1}** Defendant was charged with three counts of drug trafficking as a result of an investigation carried out by the United States Air Force Office of Special Investigations (OSI) at Cannon Air Force Base (the Base).  Defendant moved for dismissal of the charges on grounds that the OSI's investigation violated the federal Posse Comitatus Act (the PCA), 18 U.S.C. § 1385 (1994).  As explained in greater detail in the body of this opinion, the PCA

1

places limitations on the degree to which the United States military may participate in local law enforcement efforts. *See State v. Cooper*, 1998-NMCA-180, ¶ 14, 126 N.M. 500, 972 P.2d 1. The district court concluded that the OSI investigation did not violate the PCA and denied the motion to dismiss. Defendant appeals and argues that the district court erred in concluding that the PCA was not violated and claims that he received ineffective assistance of counsel. We reject both assertions, and we affirm.

## I.    BACKGROUND

**{2}**    Defendant was charged with three counts of distributing methamphetamine in violation of NMSA 1978, Section 30-31-20(A)(2) (2006). These charges stemmed from a sting operation carried out by the OSI. On the morning of trial, Defendant made an oral motion for dismissal of the charges based on the assertion that the OSI's investigation violated the PCA. The district court took the motion under advisement and indicated that the issue would be revisited at trial and after the facts underlying the charges were more fully developed. A summary of the pertinent evidence presented at trial follows.

**{3}**    Jason McMackin (McMackin), an agent with the OSI at the Base, was in charge of the investigation of Defendant. At the time of Defendant's trial, McMackin had served in the military for more than eight years and had focused on narcotics investigations for the last three of those years. One of the OSI's responsibilities is to ensure the safety of military personnel at the Base. This entails periodic assessments of potential narcotics sources in the community surrounding the Base.

**{4}**    The investigation into Defendant began when the OSI received reports that airmen were obtaining narcotics from a local business named Solar Shield. During the investigation, McMackin utilized the services of a confidential informant, airman Dustin Maples (Maples), who had a part-time job at Solar Shield. Defendant's uncle, who also worked at Solar Shield, informed Maples that Defendant could procure narcotics for Maples. Defendant's uncle arranged several meetings between Maples and Defendant, and during those meetings Defendant sold Maples methamphetamine. These transactions were monitored by McMackin and other OSI agents.

**{5}**    After each transaction, Maples turned over the methamphetamine he purchased from Defendant to McMackin. After receiving the methamphetamine, McMackin performed field tests and sent the drugs to the United States Army Criminal Investigation Laboratory. McMackin's field tests confirmed that the drugs were indeed methamphetamine, and the military forensic examiner who evaluated the drugs at the Army lab also confirmed this conclusion.

**{6}**    There was no testimony presented at trial regarding when, under what circumstances, and by whom Defendant was arrested, nor is there discussion of these facts in the parties' submissions. McMackin testified only that the OSI conducts monthly reviews with either the Clovis Police Department, the New Mexico State Police, or the Region Five task force.

2

He explained that when one of these law enforcement agencies has interest in one of OSI's targets, OSI passes that case off to the agency. Prior to trial, there was some discussion in chambers regarding the "mingling" of local, federal, and military law enforcement in the investigation of Defendant. Specifically, the State proffered that both the Clovis Police Department and the federal Drug Enforcement Agency were involved.

**{7}** After the State rested its case at trial, Defendant renewed his motion to dismiss under the PCA. The district court denied the motion. The court concluded that the PCA had not been violated because "there was an appropriate military interest" that justified the OSI's investigation of Defendant. Defendant was convicted on all three trafficking charges.

## II. DISCUSSION

**{8}** On appeal, Defendant raises two issues. First, he argues that the district court erred in denying his motion to dismiss because the OSI investigation violated the PCA. Defendant asserts that, as a consequence of the PCA violation, this Court must overturn his conviction and dismiss the charges against him. Second, Defendant argues that he received ineffective assistance of counsel at trial because the PCA violation was raised for the first time on the day of trial. We review both claims de novo. *See State v. Mondragon*, 2008-NMCA-157, ¶ 6, 145 N.M. 574, 203 P.3d 105 (reviewing de novo a defendant's claim that the trial court erred as a matter of law in denying his motion to dismiss); *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532 ("The standard of review for claims of ineffective assistance of counsel is de novo."). We address each issue in turn.

### A. The PCA

**{9}** The text of the PCA states:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1385. "The term 'posse comitatus' ([which means literally the] 'power of the county') denotes a sheriff's common law authority to command the assistance of able-bodied citizens in order to enforce the law." Brian L. Porto, Annotation, *Construction and Application of Posse Comitatus Act (18 U.S.C.S. § 1385), and Similar Predecessor Provisions, Restricting Use of United States Army and Air Force to Execute Laws*, 141 A.L.R. Fed. 271 § 2[a] (1997); *see, e.g.*, *Eaton v. Bernalillo County*, 46 N.M. 318, 325-26, 128 P.2d 738, 742-43 (1942) (discussing a former New Mexico statute that codified the common law rule making it an indictable offense to refuse a sheriff's call for aid of the posse comitatus).

**{10}** "Although British common law considered military personnel eligible to assist law

3

enforcement, the American tradition has been to limit the role the military could play on the domestic scene." Sean J. Kealy, *Reexamining the Posse Comitatus Act: Toward a Right to Civil Law Enforcement*, 21 Yale L. & Pol'y Rev. 383, 389 (2003). "This tradition reflects an American concern, formed well before the Revolution, about the dangers of using a standing army to keep civil peace" and "[t]his tradition was codified in 1878 with the [PCA], which forbade the use of the Army to execute the laws or to provide aid to civil authorities in the enforcement of civilian laws." *Id.*; *see also Cooper*, 1998-NMCA-180, ¶ 13 ("[U]nderlying the PCA is the continuing recognition of the threat to civil liberties caused by the use of military personnel to execute civilian laws.").

**{11}** The PCA does precisely what the text of the statute indicates. The PCA "makes it a criminal offense, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, to willfully use any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws[.]" *Cooper*, 1998-NMCA-180, ¶ 13 (internal quotation marks and citation omitted). Courts have employed varying tests to determine when and under what circumstances the PCA is violated. *Id.* ¶ 14. In *Cooper*, we adopted the test that has been recognized by most courts: "[W]here military involvement is limited and does not invade the traditional functions of civilian law enforcement officers, such as in making arrests, conducting searches or seizing evidence, the coordination of military efforts with those of civilian law enforcement does not violate the PCA." *Id.*

**{12}** As described above, the district court's conclusion that the OSI's investigation of Defendant did not violate the PCA was premised on the finding that there was an appropriate military interest underlying the investigation. Whether an appropriate military interest existed to justify the OSI's investigation of Defendant does not resolve the question of whether that investigation violated the PCA. As discussed above, the pertinent inquiry is whether the OSI's involvement in the investigation of Defendant was limited and, thus, did not invade the traditional functions of civilian law enforcement. *Id.* Because the district court employed the wrong legal standard in assessing the merits of Defendant's claim, we cannot affirm this case on the basis that the OSI's investigation did not violate the PCA. Nevertheless, "[a]n appellate court will affirm a lower court's ruling if right for any reason." *Westland Dev. Co. v. Romero*, 117 N.M. 292, 293, 871 P.2d 388, 389 (Ct. App. 1994).

**{13}** In *Cooper*, this Court made clear that, even where a violation of the PCA is established, "courts have uniformly held that the exclusionary rule still does not apply unless it can be shown that, based on widespread and repeated violations of the [PCA], the evidence should be suppressed for deterrent purposes." *Cooper*, 1998-NMCA-180, ¶ 21. Even if we were to assume without deciding that the PCA was violated in this case, Defendant presented no evidence of widespread and repeated violations and, therefore, Defendant was not and is not entitled to exclusion of the evidence obtained by the OSI through their investigation, dismissal of the charges against him, or any other relief. *Cf. United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir. 1979) (declining to address the "complex and difficult issue" of whether, under the facts presented, the PCA was violated and, assuming without deciding that there was a violation, concluding that the exclusionary rule was inapplicable).

4

Defendant failed to prove he was entitled to any relief. Accordingly, we reject Defendant's argument that the district court erred in denying his motion to dismiss.

**{14}** Our focus on the second requirement in *Cooper* works no unfairness on Defendant. *See Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (recognizing that an appellate court will not affirm a ruling on a ground not relied upon by the district court if reliance on the new ground would be unfair to the appellant). Defendant's motion to dismiss for violation of the PCA was based on *Cooper*. *Cooper* requires that a defendant prove two elements: First that the PCA was violated and second that there were widespread and repeated violations of the PCA. *Cooper*, 1998-NMCA-180, ¶¶ 14, 21. The burden was upon Defendant to prove both elements. *See* 141 A.L.R. Fed. 271, § 2[b]. Defendant failed to submit evidence bearing on the question of his entitlement to relief and, thus, it is not unfair to hold this failure against Defendant. *Cf. Eldin v. Farmers Alliance Mut. Ins.*, 119 N.M. 370, 376, 890 P.2d 823, 829 (Ct. App. 1994) (declining to apply the right for any reason doctrine on grounds that it would be unfair to appellant who did not receive notice below of the grounds upon which the right for any reason doctrine was asserted on appeal).

**{15}** Recognizing that he did not prove the second element in *Cooper*, Defendant argues on appeal that we should revisit our conclusions in *Cooper* concerning the applicability of the exclusionary rule in the context of the PCA. Specifically, Defendant contends that "courts faced with egregious violations of the PCA have found it justifiable to apply an exclusionary rule without waiting for additional violations of the [PCA] to materialize" and argues that we should do the same. In support of this assertion, Defendant directs us to *Taylor v. State*, 645 P.2d 522 (Okla. Crim. App. 1982), and *State v. Pattioay*, 896 P.2d 911 (Haw. 1995). We examine these cases below, but first clarify why the exclusionary rule has only limited applicability in the PCA context.

**{16}** Courts have cited at least three reasons for the conclusion that the exclusionary rule is a remedy for only a narrow subset of PCA violations. First, the PCA, where applicable, provides criminal and monetary sanctions for any violations; the exclusion of evidence is not mentioned as a remedy. *Taylor*, 645 P.2d at 524. "Secondly, the potential abuses of the [PCA] obviously are not of the same magnitude, neither qualitatively nor quantitatively, as violations under the Fourth Amendment." *Id.*; *see United States v. Walden*, 490 F.2d 372, 376-77 (4th Cir. 1974) (addressing whether the exclusionary rule is an appropriate remedy for PCA violations and observing that the considerations that require an exclusionary rule in the Fourth Amendment context are not present in the context of a PCA violation). As one commentator pointed out, courts have held that "a PCA violation does not amount to a constitutional violation and therefore neither dismissal of the charges nor the exclusionary rule is an appropriate remedy." Kealy, *supra*, at 406. Third, and "[f]inally, the [PCA] expresses a policy that is for the benefit of the people as a whole, but not one that may be characterized as expressly designed to protect the personal rights of defendants." *Taylor*, 645 P.2d at 524 (internal quotation marks and citation omitted). In other words, the PCA "does not provide that the criminal is to go free because the constable has blundered." *Walden*, 490 F.2d at 376 (internal quotation marks and citation omitted). For the foregoing

5

reasons, we reaffirm our support for the conclusion in *Cooper* that the exclusionary rule is not a per se remedy for PCA violations but, rather, it is only available where the particular PCA violation at issue is part of a widespread and repeated pattern of such violations and exclusion is necessary for purposes of deterrence.

**{17}** Neither *Taylor* nor *Pattioay* persuades us to abandon our support for this conclusion. In *Taylor*, the Court of Criminal Appeals of Oklahoma first established that "violations of the [PCA] do not warrant invocation of an exclusionary rule." *Taylor*, 645 P.2d at 524. However, the court went on to state that "it does not necessarily follow that all evidence obtained in violation of the [PCA] will be admissible" and that the court would "examine each case involving a violation of the [PCA] and determine whether the illegal conduct by the law enforcement personnel rises to an intolerable level as to necessitate an exclusion of the evidence resulting from the tainted arrest." *Id.* Examining the facts in that case, the court found that the military intervention was "excessive," could not "be condoned," and, thus, concluded that the exclusionary rule applied. *Id.* at 525. We decline to adopt the analysis embraced in *Taylor* as it is inconsistent with the conclusion in *Cooper* that the exclusionary rule applies only when there is evidence of widespread and repeated violations of the PCA. We are unwilling to carve out further exceptions that would permit application of the exclusionary rule based on the intolerableness or severity of the alleged PCA violation. *Cf. State v. Roberts*, 786 P.2d 630, 635 (Kan. Ct. App. 1990) (calling into question the precedential value of *Taylor* and declining to apply the "extraordinary remedy of exclusion" for violation of the PCA (internal quotation marks and citation omitted)).

**{18}** In *Pattioay*, the Supreme Court of Hawai'i similarly recognized that "[t]he conclusion that the PCA was violated does not lead inexorably to a ruling that [a defendant is] entitled to the remedy of suppression" and that "courts have generally found that creation or application of an exclusionary rule is not warranted" where a violation of the PCA is established. *Pattioay*, 896 P.2d at 922-23. Nonetheless, the court held that evidence obtained in violation of the PCA and then proffered in criminal proceedings against a defendant must be suppressed. *Id.* at 925. The Supreme Court of Hawai'i cited two grounds as support for this conclusion: (1) *Lee v. Florida*, 392 U.S. 378, 385-87 (1968), where the United States Supreme Court held that recordings obtained by intercepting a defendant's telephone conversations in contravention of federal law were subject to the exclusionary rule; and (2) the Supreme Court of Hawai'i's supervisory powers in the administration of criminal justice in the courts of Hawai'i. *Pattioay*, 896 P.2d at 923-25.

**{19}** We are not persuaded that *Pattioay* calls into question what we said in *Cooper*. *Lee* was decided in 1968 and, since then, various federal courts have examined the issue of the applicability of the exclusionary rule in the PCA context. *See* 141 A.L.R. Fed. 271, § 6 (summarizing cases where the exclusionary rule was held an inappropriate remedy for a PCA violation). To our knowledge, *Lee* has not been cited as a basis for extending the exclusionary rule as a per se remedy for PCA violations by any other court except the Supreme Court of Hawai'i. *See id.*; Kealy, *supra*, at 405-08. Additionally, Defendant has failed to explain how the independent state grounds cited by the Supreme Court of Hawai'i

6

are relevant in New Mexico, and this Court has no duty to review an argument that is not adequately developed. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

**{20}** In his dissent, Judge Garcia would have us remand for a new trial because, in his view, the "district court inappropriately thwarted Defendant's opportunity to present factual evidence regarding potential widespread and repeated violations of the [PCA]." Dissenting Opinion ¶ 35. The record shows otherwise.

**{21}** As discussed above, the district court took under advisement Defendant's pretrial motion to dismiss for violation of the PCA and instructed the parties that the motion would be revisited both at the end of the State's case and at the end of Defendant's case. Defendant renewed the motion to dismiss after the State rested. Based on his contentions that local law enforcement's involvement was very limited and that the investigation was almost entirely a military operation, Defendant argued that the PCA had been violated.

**{22}** The district court correctly acknowledged that the PCA prohibits the military from "taking over" and conducting civilian police affairs, but the court's focus was the military purpose underlying the investigation. In light of the court's comments, the State asked to reopen its case to submit additional evidence regarding the purpose of the investigation. Defendant did not object and reviewed his version of the evidence after which the court granted the State's request.

**{23}** After hearing the additional evidence, the court denied Defendant's motion. The court then inquired whether Defendant intended to present any further evidence. Defendant rested.

**{24}** The foregoing demonstrates that the district court did nothing to prevent or limit Defendant's ability to present evidence material to the two prongs of *Cooper*. Any failure to develop the record regarding widespread and repeated violations is attributable to Defendant and, not as Judge Garcia concludes, to the district court. Moreover, Defendant does not argue on appeal that he was denied the opportunity to present evidence or that had he been allowed to present more evidence, he could have shown that there were potential widespread and repeated violations of the PCA. Our case law does not permit us to make this argument for Defendant. *See State v. Correa*, 2009-NMSC-051, ¶ 31, 147 N.M. 291, 222 P.3d 1 ("On appeal, issues not briefed are considered abandoned, and we do not raise them on our own."). Defendant instead urges us to modify *Cooper* and eliminate the requirement that a defendant show widespread and repeated violations. We have already addressed this argument and rejected it. To remand in this circumstance would allow Defendant a second bite at the proverbial apple. *See State v. Curry,* 2002-NMCA-092, ¶ 21, 132 N.M. 602, 52 P.3d 974 (affirming denial of motion for new trial thus rejecting the defendants attempt to "take another bite at the apple."). This we cannot do.

**{25}** For the foregoing reasons, we reject Defendant's assertion that the district court erred

7

in denying his motion to dismiss. We proceed to Defendant's ineffective assistance of counsel claims.

## B.    Ineffective Assistance of Counsel

**{26}**    The law governing ineffective assistance of counsel claims in New Mexico is well settled.

> To establish a prima facie case of ineffective assistance of counsel, Defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted).

> When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.

*State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

**{27}**    Defendant's ineffective assistance of counsel claim is based on two grounds. We address each in turn. First, he asserts that trial counsel was ineffective because counsel raised the issue of the PCA violation in an untimely fashion, i.e., the morning of the trial. The State responds that the timing of the motion is inconsequential in light of the fact that Defendant was not entitled to a remedy even if he had prevailed in proving a violation of the PCA and, therefore, cannot prove that the timing of the motion prejudiced him in any way. We agree with the State.

**{28}**    As discussed above, there was no evidence presented that the OSI's investigation of Defendant was part of widespread and repeated violations of the PCA, and Defendant was not and is not entitled to any relief. Accordingly, Defendant cannot prove that the timing of the motion caused him prejudice. Regardless of when the motion was submitted, it would not have affected the proceedings. As Defendant cannot prove that he was prejudiced due to the timing of the motion, this argument is inadequate to prove a prima facie case of ineffective assistance of counsel.

**{29}**    The second ground upon which Defendant bases his ineffective assistance of counsel

claim concerns the fact that the State amended the charges against Defendant both the day before trial and at trial. Defendant argues that trial counsel was ineffective in failing to realize and act upon the charging errors. Defendant submits a variety of claims to support this argument. He claims that, had trial counsel recognized the charging error, plea negotiations would have proceeded differently and he may have altered his decision to go to trial. He then claims that the error with the charges may have affected the jury's deliberations. Next, he claims that trial counsel's failure to recognize the charging error establishes that trial counsel "did little or nothing" to represent Defendant's interests in violation of the rules of professional conduct. Finally, Defendant objects that trial counsel also failed to file pleadings and did not attend pretrial hearings.

{30} We are unpersuaded by these arguments. Defendant has not cited record evidence that plea negotiations ever took place, and we do not, therefore, need to consider what Defendant would have done differently at those alleged negotiations. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (declining to consider arguments based on factual allegations that are unsupported by citation to the record proper). Furthermore, no record citations were provided to substantiate Defendant's claim that defense counsel failed to attend pretrial hearings and, thus, we also decline to consider this contention. *See id.* Aside from Defendant's unsupported and speculative suggestion, there is no evidence that the charging error had any effect on the jury. *See id.* That defense counsel failed to recognize that there was something amiss with the charges, a problem the State later remedied, does not establish that defense counsel did nothing to represent Defendant's interests. Finally, it is not clear how the absence of pleadings proves that defense counsel was ineffective. *See Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

## III. CONCLUSION

{31} For the foregoing reasons, we affirm.

{32} **IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**I CONCUR:**


_____
**JAMES J. WECHSLER, Judge**

**TIMOTHY L. GARCIA, Judge (concurring in part and dissenting in part)**

9

**GARCIA, Judge (concurring in part and dissenting in part).**

**{33}**    I agree with the majority regarding its determination that the district court erred when it ruled that the PCA did not apply because an appropriate military interest existed to justify the OSI's investigation.  I write to respectfully dissent from the majority decision to apply the right for any reason doctrine that resulted in an affirmance of the lower court ruling on other grounds.

**{34}**    This Court will only apply a right for any reason doctrine when our reliance on new grounds would not be unfair to appellant. *Meiboom*, 2000-NMSC-004, ¶ 20.  On appeal, however, this Court "will not assume the role of the trial court and delve into . . . fact-dependent inquiries." *Id.* (alteration omitted) (internal quotation marks and citation omitted). We have specifically refrained from doing so "in the absence of any substantial evidence supporting what would be the right reason." *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999-NMSC-006, ¶ 20, 127 N.M. 1, 976 P.2d 1 (filed 1998).  "To do so without allowing [the p]laintiffs the opportunity to develop the record . . . [regarding] factual allegations would work undue prejudice upon them." *Pinnell v. Bd. of County Comm'rs*, 1999-NMCA-074, ¶ 14, 127 N.M. 452, 982 P.2d 503.  A finding of prejudice to the appellant is "especially apparent in [a] case [where the other party] never explicitly raised the issue below." *Id*.

**{35}**    In this case, the district court incorrectly ruled that the PCA did not apply by failing to recognize the appropriate test established in *Cooper*, 1998-NMCA-180, ¶ 14, and failing to take any evidence regarding widespread and repeated violations of the Act, *id.* ¶ 21.  By ruling that the PCA did not apply at the close of the State's evidence during trial, the district court inappropriately thwarted Defendant's opportunity to present factual evidence regarding potential widespread and repeated violations of the Act.  Evidence regarding whether any widespread and repeated violations of the Act factually existed was not presented by either party prior to the district court's premature and incorrect ruling on the PCA defense.  This failure to develop the record or allow Defendant to proceed with his evidence before ruling on the applicability of the PCA was unfair and prejudicial.

**{36}**    It is clear that the PCA is an obscure and unique statutory provision that only applies to a rare number of cases. *See id.* ¶ 14; *see also Pattioay*, 896 P.2d at 922.  The fact that Defendant did not discover or present this potential defense until the day before trial supports its obscurity.  The additional time taken by the district court to familiarize itself with the Act also confirms how rarely our district courts deal with the PCA.  Under these circumstances and the misapplication of the Act during trial, it is unfair to Defendant for this Court to utilize its position of careful scholarly review to affirm on grounds that were not raised or addressed below. *See Pinnell*, 1999-NMCA-074, ¶ 14.

**{37}**    The majority also noted that the PCA has not been recognized to create a Fourth Amendment protection. *Walden*, 490 F.2d at 376-77; Kealy, *supra*, at 406.  As a result, various jurisdictions addressing the Act have applied different evidentiary rules and

standards for analyzing whether evidence obtained in violation of the PCA should be excluded.  *See Pattioay*, 896 P.2d at 922-25 (applying federal wiretapping authority and the supervisory power of the court); *Roberts*, 786 P.2d at 634-35 (refusing to apply the remedy of exclusion for violations of the PCA); *Taylor*, 645 P.2d at 524 (applying a case-by-case analysis to determine whether the conduct by law enforcement personnel rises to an intolerable level); *Cooper*, 1998-NMCA-180, ¶¶ 14, 21 (applying the exclusionary rule as a deterrent based upon widespread and repeated violations of the PCA).  New Mexico appears to be one of the only states where a standard of reasonableness regarding the actions by law enforcement is not a consideration in determining whether evidence seized as a result of a violation of the PCA should be excluded.  *Cooper*, 1998-NMCA-180, ¶ 21.

**{38}**    Defendant has asked this Court to reconsider whether egregious violations of the PCA should be deemed sufficient to apply an exclusionary rule.  Until available evidence regarding any widespread and repeated violations of the PCA has been presented to the district court, this Court should not place itself in the position of reconsidering *Cooper* and considering a new exclusionary rule for PCA violations.  As a result, this case should be remanded to the district court for a new trial.  Defendant should also be allowed to present any evidence for consideration of whether the PCA applies and whether any evidence seized should be excluded.

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Gonzales*, Docket No. 28,693**

| **AE** | **APPEAL AND ERROR** |
| AE-RR | Right for Any Reason Doctrine |

| **AT** | **ATTORNEYS** |
| AT-EA | Effective Assistance of Counsel |

| **CT** | **CONSTITUTIONAL LAW** |
| CT-EC | Exclusionary Rule |

| **CA** | **CRIMINAL PROCEDURE** |
| CA-EA | Effective Assistance of Counsel |

| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |

| **FL** | **FEDERAL LAW** |
| FL-AS | Armed Services |
| FL-PO | Posse Comitatus Act |