This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**No. S-1-SC-37388**

**Filing Date: April 20, 2020**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JASON NOWICKI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Brett R. Loveless, District Judge**

L. Helen Bennett, P.C.
Linda Helen Bennett
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**BACON, Justice.**

**{1}** Defendant Jason Nowicki was convicted of first-degree murder (willful and deliberate), contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); felony murder, contrary to Section 30-2-1(A)(2); conspiracy to commit first-degree murder, contrary to Section 30-2-1(A)(1) and NMSA 1978, Section 30-28-2 (1979); conspiracy to commit felony murder, contrary to Section 30-2-1(A)(2) and Section 30-28-2; shooting at a dwelling or occupied building (great bodily harm), contrary to NMSA 1978, Section 30-3-

8(A) (1993); and conspiracy to commit shooting at a dwelling or occupied building, contrary to Section 30-3-8(A) and Section 30-28-2.[1]  Defendant appeals directly to this Court pursuant to Rule 12-102(A)(1) NMRA.

**{2}**     Defendant's convictions stem from the shooting death of Eduardo Quintana (Victim).  Defendant presents two arguments[2] for his appeal: (1) his sentences for multiple crimes arising out of one death violate his right to be free from double jeopardy, and (2) the district court erred in denying Defendant's request for a *Daubert-Alberico* hearing to verify the reliability of expert testimony.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *State v. Alberico*, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192.  Without reaching the merits of Defendant's double jeopardy argument, we vacate his convictions for felony murder, conspiracy to commit felony murder, and shooting at a dwelling or occupied building. Concluding that the district court did not err in admitting the expert testimony, we affirm Defendant's other convictions.

## I.     BACKGROUND

**{3}**     On November 9, 2012, Defendant and three other men parked their vehicle outside Victim's apartment, and waited for Victim to arrive.  Defendant was upset with Victim over a dispute that had occurred earlier.  Upon seeing Victim approaching, Defendant and the other men stepped outside of the vehicle, and Defendant called to Victim.  Victim ran toward his apartment.  Defendant brandished a nine millimeter pistol and fired multiple times at Victim, who was in front of his apartment building.  Victim was hit at least twice by the gunfire.  Victim stumbled through his front door and was found dead on his kitchen floor.  Bullets fired from Defendant's pistol also struck the apartment building behind Victim.

**{4}**     Defendant was indicted by a grand jury for charges related to the shooting of Victim.  A jury convicted Defendant of the crimes referenced above.  Defendant was sentenced to life imprisonment for his first-degree murder conviction and life imprisonment for his felony murder conviction, with both sentences to run concurrently.  Defendant was additionally sentenced to eighteen years imprisonment for his other convictions and guilty pleas stemming from other charges.

## II.     DISCUSSION

**A.     Based on This Court's Recent Opinion in *State v. Comitz*, We Vacate Defendant's Convictions for Felony Murder, Conspiracy to Commit Felony Murder, and Shooting at a Dwelling**

---

1Defendant's conviction for conspiracy to shoot at a dwelling or occupied building was vacated by the district court.

2In his statement of issues, Defendant also raised an argument related to his right to an impartial jury.  This argument was not articulated, or referenced, in his brief in chief.  We will not analyze undeveloped arguments. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating a court "has no duty to review an argument that is not adequately developed").

**{5}** Defendant appeals his felony murder conviction, arguing that his convictions for both felony murder and shooting at a dwelling or occupied building violate his double jeopardy rights because the two convictions punish Defendant twice for the same act. This argument, set forth in Defendant's brief in chief, was articulated three days before this Court rendered its opinion in *State v. Comitz*, 2019-NMSC-011, 443 P.3d 1130. In *Comitz*, we held that the crime of shooting at a dwelling or occupied building cannot be supported merely by the fact that a defendant is shooting at a *person* standing in front of a dwelling. *Id.* ¶ 18 (determining that under Section 30-3-8(A), a conviction for shooting at a dwelling or occupied building cannot stand when the intended target of the shooting is a person, not a dwelling). In light of our previous holding, we vacate Defendant's convictions for felony murder, conspiracy to commit felony murder,[3] and shooting at a dwelling or occupied building without addressing his double jeopardy arguments.

**{6}** In this case, Defendant's conviction of shooting at a dwelling or occupied building was based upon the fact that he shot at Victim, who was standing in front of his apartment building. The State concedes that, under *Comitz*, this cannot support Defendant's conviction for shooting at a dwelling or occupied building. While we are not bound by the State's concession, *see, e.g., State v. Martinez* 1999-NMSC-018, ¶ 26, 127 N.M. 207, 979 P.2d 718, we find support in its reasoning. The State underpins its concession by pointing out that the pivotal fact in this case is that Defendant intended to shoot at Victim, not the dwelling. The State emphasizes that the only fact that supports Defendant's conviction for shooting at a dwelling or occupied building is that the bullets *aimed at Victim* struck a dwelling. We agree. The salient facts here are that Defendant did not immediately shoot at the apartment building, but rather waited for Victim to arrive. Further, Defendant called out to Victim before shooting, and the evidence shows that after the shooting ceased, Defendant asked if he had hit Victim. Viewed in a light most favorable to the verdict, *see State v. Torres*, 2018-NMSC-013, ¶ 42, 413 P.3d 467, the evidence supports that Defendant was shooting at Victim, not the dwelling behind him. Thus, under *Comitz*, Defendant's conviction for shooting at a dwelling cannot stand. As in *Comitz*, we vacate Defendant's conviction for shooting at a dwelling or occupied building for failure of proof. *See* 2019-NMSC-011, ¶ 24.

**{7}** Defendant's conviction for shooting at a dwelling or occupied building served as the predicate felony for his felony murder conviction. We therefore vacate Defendant's

---

3At Defendant's January 14, 2016, sentencing hearing, the district court orally sentenced Defendant to nine years imprisonment for conspiracy to commit felony murder. The district court, however, omitted any sentencing for conspiracy to commit felony murder in its written and filed judgment. This omission likely was in error, as the written judgment references Defendant's conviction for felony murder, but inexplicably omits any sentence for the conviction. When there is conflict between a district court's oral sentencing and written judgment, the court's oral pronouncements generally control. *See State v. Stejskal*, 2018-NMCA-045, ¶ 14, 421 P.3d 856 ("[I]f there is a variance between the oral pronouncement of sentence and the written judgment of conviction, the oral sentence generally controls." (internal quotation marks and citation omitted)); *see also* Rule 5-113(B) NMRA (allowing a district court to amend written judgments to correct oversight or omission). Thus, it appears that Defendant's conviction for conspiracy to commit felony murder was not vacated, and the district court indeed imposed sentence at Defendant's January 14, 2016, hearing. Neither party briefs this issue. Nevertheless, we will vacate Defendant's conviction for conspiracy to commit felony murder for the same reasons stated herein that we vacate Defendant's convictions for felony murder and shooting at a dwelling or occupied building.

felony murder conviction and conspiracy to commit felony murder. Because Defendant's felony murder conviction is vacated, his double jeopardy arguments are moot and unnecessary to the disposition of this matter. We do not address them. *See Schlieter v. Carlos*, 1989-NMSC-037, ¶ 13, 108 N.M. 507, 775 P.2d 709 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so. We have repeatedly declined to decide constitutional questions unless necessary to the disposition of the case.").

**B.    The District Court Did Not Abuse Its Discretion in Admitting Expert Testimony on Firearm Forensics and Tool Mark Analysis Without Holding a *Daubert-Alberico* Hearing**

**{8}**    Defendant argues next that the district court erred in admitting firearm evidence without holding a *Daubert-Alberico* hearing. Defendant raises this argument pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1. Specifically, Defendant contends that the State's witness, Jay Stuart, used unreliable and invalid forensic methods in concluding that a pistol traceable to Defendant was used to shoot Victim. According to Defendant, the district court therefore erred by denying his request to hold a *Daubert-Alberico* hearing.

**{9}**    Mr. Stuart, a forensic firearm and tool mark examiner for the Albuquerque Police Department, testified as an expert witness at trial. Mr. Stuart offered his opinion that a firearm traceable to Defendant was likely the firearm used in the shooting of Victim. This conclusion was based on comparing bullets recovered at the scene of Victim's death with bullets fired from the pistol linked to Defendant. Mr. Stuart stated his conclusion was a "practical certainty," and that the chances of the bullets coming from another firearm were so remote as to constitute an impossibility. At trial, counsel for Defendant did not object to the tendering of Mr. Stuart as an expert, and did not object to his expert conclusion. Before trial, however, counsel for Defendant did raise issue with the validity of the science underlying Mr. Stuart's conclusions, and requested a *Daubert-Alberico* hearing. The district court denied the request for a hearing, finding "[t]he proposed testimony by the State's Firearm Identification Expert is sufficiently scientific."

**{10}**    We will review the district court's decision for abuse of discretion. Defendant asks us to employ a de novo review, contending his argument is a threshold question of whether the district court applied the correct evidentiary rule. We disagree with this contention, however, because Defendant is arguing the reliability and validity of Mr. Stuart's ballistic techniques. Under *Alberico*, reliability and validity are patently discretionary considerations for a district court, and those discretionary decisions are reviewed for abuse of discretion. 1993-NMSC-047, ¶¶ 47-51, 56-62.

**{11}**    Expert testimony must conform to the requirements of Rule 11-702 NMRA. In *Alberico*, we stated three basic requirements for the admission of expert testimony under Rule 11-702: (1) the "expert must be qualified"; (2) the expert's testimony must

assist the trier of fact; and (3) the expert's testimony must be about "scientific, technical, or other specialized knowledge" with a reliable basis. 1993-NMSC-047, ¶¶ 43-45. Only reliability is at issue in the instant matter. Reliability is a determination of "whether the scientific technique is based upon well-recognized scientific principle and whether it is capable of supporting opinions based upon reasonable probability rather than conjecture." *Id.* ¶ 47. In order to make this reliability determination, a district court considers:

> (1) whether a theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known potential rate of error" in using a particular scientific technique "and the existence and maintenance of standards controlling the technique's operation"; and (4) whether the theory or technique has been generally accepted in the particular scientific field.

*State v. Anderson*, 1994-NMSC-089, ¶ 15, 118 N.M. 284, 881 P.2d 29 (quoting *Daubert*, 509 U.S. at 593-94).

**{12}** Defendant essentially argues that the science underlying Mr. Stuart's conclusions—firearm forensics and tool mark analysis—is invalid and unreliable. As stated by our Court of Appeals in *State v. Fuentes*, when the underlying science of an expert's testimony is "properly . . . taken for granted because the reliability of the science in question has long been accepted, a defendant must make an affirmative showing that there is some reason to doubt the reliability of that science before a district court is obligated to require a reliability hearing." 2010-NMCA-027, ¶ 28, 147 N.M. 761, 228 P.3d 1181. Defendant failed to make such a showing here.

**{13}** Despite this failure to adequately challenge the reliability of the firearm forensics, we briefly examine Mr. Stuart's testimony under the guidance set forth by this Court in *Anderson*. *See* 1994-NMSC-089, ¶ 15. First, Mr. Stuart described at trial the various experiments used by firearms examiners to hone firearm testing techniques. Second, Mr. Stuart accounted for how his scientific techniques had been tested and peer-reviewed, and described how he had published research in that area. Third, Mr. Stuart testified to the guidelines and procedure employed in firearm forensic testing and tool mark analysis. Lastly, we reiterate that the theories and techniques underlying firearm forensics and tool mark analysis have been widely accepted in the courts and scientific fields. *See Fuentes*, 2010-NMCA-027, ¶ 26.

**{14}** We see no reason to doubt the validity and reliability of the firearm forensics and tool mark analysis that Mr. Stuart relied on. Given the established reliability of the science, the district court properly decided against the necessity of a *Daubert-Alberico* hearing. *See State v. Lente*, 2005-NMCA-111, ¶ 8, 138 N.M. 312, 119 P.3d 737 (observing that courts have discretionary authority "to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

The district court did not abuse its discretion in admitting Mr. Stuart's testimony without holding a *Daubert-Alberico* hearing.

## III.    CONCLUSION

**{15}**    For the foregoing reasons, we vacate Defendant's convictions for felony murder, conspiracy to commit felony murder, and shooting at a dwelling or occupied building. We affirm Defendant's other convictions.  We remand the case to the district court for further proceedings in accordance with this decision.

**{16}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**